# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 15-1154V
## Filed: May 11, 2017
TO BE PUBLISHED

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
MAURICE HOSS,                       *
                                    *
          Petitioner,               *
v.                                  *      Attorneys' Fees and Costs;
                                    *      Appropriate Hourly Rate;
SECRETARY OF HEALTH                 *      Reasonable Basis; Special
AND HUMAN SERVICES,                 *      Processing Unit ("SPU")
                                    *
          Respondent.               *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

*Curtis R. Webb, Twin Falls ID, for petitioner.*
*Traci R. Patton, U.S. Department of Justice, Washington, DC, for respondent.*


## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

On October 8, 2015, Maurice Hoss ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). Petitioner alleged that he "received a trivalent influenza vaccination (Fluvirin 2012-2013) in his right shoulder on October 14, 2012 . . . [which] caused him to develop a Shoulder Injury Related to Vaccine Administration (SIRVA)." Petition at ¶¶ 1-2. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Approximately six months later, petitioner moved for a decision dismissing his petition, acknowledging that the evidence showed he received the trivalent influenza vaccination (Fluvirin) in his *left* arm and the adult pneumococcal vaccination (Pneumovax 23) in his *right* arm where he sustained his injury.  Petitioner's Motion to Dismiss, filed Apr. 7, 2016, at 1 (ECF No. 17).  Petitioner further acknowledged that because the adult pneumococcal vaccination is not covered by the Vaccine Act,[3] he was not entitled to compensation.  Petitioner's Motion to Dismiss at 1-2.  On April 12, 2016, the undersigned issued a decision dismissing petitioner's claim.  (ECF No. 18).  Judgment entered on May 24, 2016.  (ECF No. 20).

On May 27, 2016, petitioner filed a motion requesting $16,502.75 in attorneys' fees and $429.57 in attorneys' costs for a total amount of $16,932.32.  Motion for Attorneys' Fees and Costs ("Pet. Motion") at 1-2, 12 (ECF No. 21).  On November 3, 2016, petitioner filed a signed statement in compliance with General Order #9, indicating he incurred no out-of-pocket expenses.  (ECF No. 29).  For the reasons discussed below, the undersigned awards the amount requested, **$16,932.32** in attorneys' fees and costs.

## I.    Procedural History

Petitioner filed his petition shortly before expiration of the Vaccine Act's statute of limitations.[4]  On October 19 and 20, 2015, petitioner filed medical records and a statement of completion.  *See* Exhibits 1-7 (ECF Nos. 7-8); Statement of Completion (ECF No. 9).  The initial status conference was held telephonically with the OSM staff attorney managing this SPU case on November 18, 2015.

During the call, the OSM staff attorney questioned whether petitioner received the trivalent influenza vaccine which is covered by the Program in his injured right arm.[5]  *See* Order, issued Nov. 20, 2015, at 1 (ECF No. 11).  Petitioner's counsel responded

---

[3] "There are two types of pneumococcal vaccines . . . pneumococcal conjugate and polysaccharide vaccine[s]."  *Bundy v. Sec'y, HHS*, No. 12-769V, 2014 WL 348852, at *1 (Fed. Cl. Spec. Mstr. Jan. 8, 2014).  Only pneumococcal conjugate vaccines, routinely administered to children, are covered by the Vaccine Program.  *Id.; see Morrison v. Sec'y, HHS,* No. 04-1683, 2005 WL 2008245, at *1 (Fed. Cl. Spec. Mstr. July 26, 2005) (describing how and when pneumococcal conjugate vaccines were added to the Vaccine Table).

[4] Under the Vaccine Act, for a vaccine administered after October 1, 1988, "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." § 16(a)(2).  Petitioner received the vaccination alleged as causal on October 14, 2012, and filed his petition on October 8, 2015.

[5] Petitioner's proof of vaccination indicates only that Fluvirin and Pneumovax 23 vaccinations were purchased at Walgreens on October 14, 2012.  *See* Exhibit 2.  However, the medical records and Vaccine Adverse Event Reporting System ("VAERS") Report filed indicate petitioner received the adult pneumococcal vaccine (Pneumovax 23), a vaccine not covered by the Program, in his injured right arm and the trivalent influenza vaccine (Fluvirin), a vaccine covered by the Program, in his left arm.  *See* Exhibits 3 at 2-4; 4 at 4; 7 at 3.

that, for his claim, petitioner was relying upon the later representations of the pharmacist at Walgreens who administered the vaccine regarding her general practice when administering vaccines.[6]  *See* Order at 1.  He added that petitioner hoped to obtain an affidavit from the pharmacist and requested 60 days to pursue further documentation regarding the location of petitioner's vaccinations.  *Id.*  Noting there was a mention of right shoulder pain in the medical records which predated the date of vaccination,[7] respondent's counsel asked that petitioner file additional medical records from three years prior to vaccination, particularly those regarding his earlier shoulder pain.  *Id.* at 2.

Over the subsequent five months, petitioner's counsel encountered difficulty obtaining these documents.  *See* Order, issued Mar. 3, 2016 (ECF No. 14).  In April 2016, he obtained a more detailed vaccination record from Walgreens which showed petitioner received the pneumococcal vaccination in his injured right arm and the influenza vaccination in his left arm.  *See* Exhibit 8, filed Apr. 7, 2016 (ECF No. 15).  Petitioner filed this record and a motion requesting a dismissal decision.  The undersigned dismissed petitioner's claim, and judgment entered on May 24, 2015. (ECF Nos. 18, 20).

Petitioner filed his motion for attorneys' fees and costs on May 27, 2016.  Petitioner maintains that his claim was brought in good faith and there was a reasonable basis for his claim.  Pet. Motion at 2-4.  Citing to and including a copy of a recent decision from one of my colleagues, *Garrison*,[8] petitioner asks the undersigned to award attorneys' fees in this case using an hourly forum rate as opposed to a local or geographical rate for petitioner's counsel.  Pet. Motion at 5-10.

Respondent opposes petitioner's motion for attorneys' fees and costs.  On June 13, 2016, he filed his response, asserting the undersigned "should deny petitioners' application *in toto*."  Respondent's Opposition to Petitioner's Application for Fees and Costs ("Res. Opp.") at 1 (ECF No. 25).  Additionally, respondent argues that, if the undersigned finds a reasonable basis for filing the petition existed, she should award

---

[6] Petitioner claims he did not recall which vaccination was administered in his injured arm until he spoke to petitioner's counsel on September 17, 2015.  *See* Exhibit 1 at ¶ 5 (petitioner's affidavit).  He indicates that he based his belief that he received the influenza vaccination in his injured arm on information obtained by petitioner's counsel from the pharmacist at Walgreens who administered the vaccinations.  This individual told petitioner's counsel that she generally administers the pneumococcal vaccination in a vaccinee's non-dominant arm and influenza vaccination in a vaccinee's dominant arm.  *Id.* at ¶ 7.  Petitioner is right handed.  *Id.* at ¶ 6.

[7] In the medical record from an April 21, 2014 visit, one of petitioner's treating physicians, Dr. Lee, noted petitioner suffered pain and limited mobility in his right shoulder after a fall four years earlier which would have been 2010.  Exhibit 7 at 25.

[8] When petitioner filed his motion, this decision was under review at the United States Court of Federal Claims.  Respondent's motion for review was later denied.  *See Garrison v. Sec'y of Health & Human Servs.*, No. 14-762V, 2016 WL 3022076 (Fed. Cl. Spec. Mstr. Apr. 29, 2016) *mot. for review denied*, 128 Fed. Cl. 99 (Aug. 17, 2016).

attorneys' fees based upon a local or geographical hourly rate for petitioner's counsel. *Id.*

A few days later, petitioner filed a reply, reiterating the arguments contained in his motion.  Petitioner's Reply to Response to Motion for Attorneys' Fees and Costs ("Pet. Reply"), filed June 23, 2016 (ECF No. 26).  The undersigned issued an order on July 21, 2016, informing the parties that she did not intend to issue a decision on fees and costs in this claim until a final decision was entered in *Garrison* regarding the appropriate hourly rate for petitioner's counsel.  (ECF No. 27).

The issue is ripe for adjudication.

## II.    Legal Standard for Determining the Amount of Fees and Costs

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorneys' fees and costs may be awarded even in unsuccessful claims.  H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed).  As Judge Lettow noted in *Davis*, "the Vaccine Program employs a liberal fee-shifting scheme."  *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012).  It may be the only federal fee-shifting statute that permits unsuccessful litigants to recover fees and costs.

However, "Congress did not intend that every losing petition be automatically entitled to attorneys' fees."  *Perriera v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994).  The Vaccine Act requires an unsuccessful litigant to establish that their petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought before attorneys' fees and costs may be awarded.  § 15(e)(1).

"[T]he 'good faith' requirement  . . . is a subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation."  *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Petitioners are entitled to a presumption of good faith. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996); *see also Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).

This presumption does not extend to reasonable basis which must be affirmatively demonstrated by the petitioner.  *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011).  "In contrast to the subjective standard afforded the 'good faith' requirement, the 'reasonable basis' requirement 'is objective, looking not at the likelihood of success [of a claim] but more to the feasibility of the claim.'"  *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma*, 1993 WL 496981, at *1).  "[R]easonable basis is an objective standard determined by the "totality of the circumstances" inquiry."

*Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014).  It should not be rigidly applied.  *Id.* at 285; *see also Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012) (emphasizing that "[a] special master's determination . . . is entitled to deference").

After it has been determined that an award of attorneys' fees and costs is appropriate, the special master must determine the amount to be awarded.  As the Federal Circuit noted, attorneys' fees and costs were "not expected to be high" due to the "no-fault, non-adversarial system" set forth in the Vaccine Act.  *Saxton ex rel. v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993) (quoting H.R. REP. NO. 99-908, at 36 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6377).  Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)); *Saxton*, 3 F.3d at 1521.  A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is very significantly lower than the forum rate.  *Avera*, 515 F.3d at 1349.  If these two requirements are met, the *Davis* exception applies, and petitioner's counsel is paid according to the local rate.  *Id.*; *see Davis County Solid Waste Management and Energy Recovery Special Service District v. United States Environmental Protection Agency*, 169 F.3d 755 (D.C. Cir. 1999).

Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as fees.  *See Perriera v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375.  Reasonable expert costs are calculated using the same lodestar method as is used when calculating attorneys' fees.  *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009).

Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991).  They are entitled to rely on their prior experience and, based on experience and judgment, may reduce the number of hours to an amount reasonable for the work performed.  *Saxton*, 3 F.3d at 1521.  A line-by-line evaluation of the billing records is not required.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam).

The petitioner "bears the burden of establishing the hours expended, the rates charged, and the expenses incurred." *Wasson*, 24 Cl. Ct. at 484.  She "should present adequate proof [of the attorneys' fees and costs sought] at the time of the submission." *Id.* at 484 n.1.  Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983).

### III.   Good Faith and Reasonable Basis

#### A.  The Parties' Arguments

Petitioner argues that his claim "was brought in good faith and there was a reasonable basis for his claim because his October 14, 2012 trivalent influenza vaccination was implicated as the likely cause of his SIRVA if the information from the pharmacist who had given the vaccination had been accurate (and applicable to his vaccinations)."  Pet. Motion at 3-4 (emphasis omitted).  Petitioner further argues that his claim "is not analogous to Program cases in which the petitioner did not receive a vaccination covered by the National Vaccine Injury Compensation Program . . . [because petitioner] did receive a covered vaccine."  *Id.* (emphasis omitted).  Petitioner maintains that reasonable basis existed until April 4, 2016, when Walgreens found the more detailed vaccination record (*see* exhibit 8) which showed he received the pneumococcal vaccination in his injured right arm.  Pet. Reply at 3.

Opposing petitioner's request, respondent argues that petitioner's claim lacked reasonable basis because he "consistently reported that he suffered an injury in the right arm after a pneumovax vaccination."  Res. Opp. at 8 (emphasis omitted).  Respondent maintains that "filing a petition in order to preserve the statute of limitations does not equate to the claim itself having a reasonable basis."  *Id.* at 9 (emphasis omitted).  Respondent avers that the statement from the pharmacist regarding her general practice when administering vaccinations, by itself, is not sufficient to establish reasonable basis for filing the claim.  *Id.* at 9-10.

#### B.  Analysis Regarding Good Faith

A review of the medical records reveals that immediately after vaccination, petitioner attributed his shoulder pain to the pneumococcal vaccination, indicting he had received that vaccination in his right arm.  *See* Exhibits 3 at 2-3 (October 14, 2012 visit to the orthopedist); 4 at 3-4 (November 15, 2012 VAERS Report).  This information is repeated in later entries but there is no evidence petitioner himself repeated his earlier assertion. *See, e.g.*, Exhibit 3 at 4 (petitioner's orthopedist appears to be repeating the information provided by petitioner almost two years earlier).  When petitioner spoke to petitioner's counsel in September 2015, almost three years had passed since his injury.  Thus, petitioner's assertion that he could not recall in which arm he received which vaccination is reasonable, and the information obtained by petitioner's counsel from the Walgreens pharmacist would have only increased petitioner's uncertainty.  There is nothing in the record to indicate petitioner lacked the requisite good faith when filing his claim.  The undersigned finds petitioner has satisfied the statutory requirement of good faith and turns to the more difficult issue of reasonable basis.

#### C.  Analysis Regarding Reasonable Basis

It is well established that claims filed on the eve of the expiration of the Vaccine Act's statute of limitations are subject to a more lenient standard when determining if

reasonable basis exists. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2008 WL 4793152, at *5 (Fed. Cl. Spec. Mstr. Jan. 9, 2008) (noting this "long recognized" proposition). Petitioner's counsel in these cases often do not have the time needed to properly research petitioner's claim prior to filing the petition.[9]

However, this greater latitude should not be interpreted to allow for a finding of reasonable basis for every claim filed in this manner.[10]  Petitioner's counsel still is required to perform due diligence, given the available evidence and amount of time prior to the running of the statute of limitations.[11]  Furthermore, even though reasonable basis may exist at the time the petition is filed, it "may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent." *Chuisano*, 116 Fed. Cl. at 288; *see also Perriera*, 33 F.3d at 1377 (affirming the special master's finding that reasonable basis existed until the evidentiary hearing); *Hamrick*, 2008 WL 4793125, at *4 (observing that "[p]etitioner's counsel must review periodically the evidence supporting petitioner's claim").

A review of the billing records in this case shows petitioner first contacted petitioner's counsel on September 10, 2015, slightly more than a month prior to the expiration of the Vaccine Act's statute of limitations. Attachment to Pet. Motion, filed May 27, 2016, at 5 (ECF No. 21-1); *see supra* note 4 (for a discussion regarding the applicable statute of limitations).  On September 17, 2015, petitioner's counsel met with petitioner, reviewed his medical records, and discussed the site of his vaccination with the Walgreens pharmacist by telephone.  After that meeting, petitioner's counsel spoke to petitioner by telephone twice and reviewed the medical records again on October 5, 2015.  He drafted the petition on October 6, 2015, and filed it two days later, approximately six days prior to the expiration of the statute of limitations.  *Id.* at 5-6.

---

[9] *See McNett v. Sec'y of Health & Human Servs.*, No. 99-684V, 2011 WL 760314, at *8 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) (finding a review of the billing records showed petitioner's counsel "had no time to request medical record, let alone any time to review [them]"); *Hamrick*, 2008 WL 4793125, at *6 (emphasizing respondent's failure "to recognize that the looming statute of limitations prevented a thorough examination of the case"); *Turner*, 2007 WL 4410030, at *5 (finding a claim filed on the eve of the running of the statute of limitations "may be supported by less information than would be expected if counsel had more time to conduct a pre-filing investigation of the factual underpinnings and the medical basis for a vaccine claim").

[10] "A looming statute of limitations does not forever absolve a petitioner from his or her obligation to proceed with a reasonable basis to support his claim, at least not if the petitioner hopes to recover any fees and costs." *Chuisano*, 116 Fed. Cl. at 287 (emphasis omitted).  "[T]he statute of limitations is a factor that may affect the reasonable basis analysis in appropriate circumstances."  *Id.*

[11] *See Simmons v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 579 (2016) (The special master erred in finding reasonable basis existed even when the petition was filed on the eve of the expiration of the statute of limitations. Although petitioner disappeared until the day before the petition was filed, he initially contacted petitioner's counsel more than two years prior to the expiration of the statute of limitations.); *Silva v. Sec'y of Health & Human Servs.*, No. 10-101V, 2012 WL 2890452, at *13 (Fed. Cl. Spec. Mstr. June 22, 2012), *aff'd* 108 Fed. Cl. 401 (2012) (finding "[t]he attorneys essentially did not investigate [petitioner's] case properly before filing it").

Thus, it is clear that petitioner's counsel had little time to obtain further evidence regarding the injection site of the vaccinations received by petitioner almost three years earlier. Even in this short amount of time, petitioner's counsel did manage to contact the pharmacist who administered the vaccinations and review the medical records currently available before filing the petition.

After the petition was filed, petitioner's counsel worked diligently to obtain additional documentation establishing which vaccination was administered in which arm and confined himself to tasks related to this issue. *See* Attachment to Pet. Motion at 6-7. Although it required numerous telephone calls and letters,[12] petitioner's counsel was able to procure a more detailed vaccination record within six months of the petition's filing date. *See* Exhibit 8.

As stated in *Chuisano*, a determination regarding reasonable basis should not turn solely on evidentiary standards but should be "informed by a totality of circumstances." 116 Fed. Cl. at 287. In addition to the available evidence, factors such as the statute of limitations and conduct of petitioner's counsel should be considered. *Id.* at 288.

Furthermore, an examination of the evidentiary record in this case reveals the evidence supporting a conclusion that petitioner received the non-covered pneumococcal vaccination in his injured right arm is not as strong as it initially appears. Respondent correctly asserts that immediately following vaccination, petitioner himself indicated he received the pneumococcal vaccination in his right injured arm. Occurring far closer in time to petitioner's injury, this earlier assertion should be accorded more weight than petitioner's later uncertainty.[13] However, even that earlier assertion does not carry the same weight as more reliable evidence such as the more detailed vaccination record later obtained by petitioner.

Respondent argues a reasonable basis for filing this claim did not exist because the information initially sought by petitioner's counsel regarding the general practice of the Walgreens pharmacist, even if procured, would not have been sufficient to overcome the evidence of petitioner's earlier assertions found in the contemporaneously created medical records. Res. Opp. at 9. Respondent may be correct, but that is a determination the undersigned would have made if petitioner had obtained the evidence he sought. The standard used in determining if reasonable basis exists "is something less than the preponderant evidence ultimately required to prevail on one's vaccine-

---

[12] Petitioner's counsel called representatives on Walgreens on October 16, 20, and 29, 2015; February 18 and 29, 2016; March 1, 11, and 17, 2016; and April 4, 2016. *See* Attachment to Pet. Motion at 6-7.

[13] "Special masters frequently accord more weight to contemporaneously-recorded medical symptoms than those recounted in later medical histories, affidavits, or trial testimony." *Vergara v. Health & Human Servs.,* 08–882V, 2014 WL 2795491, at *4 (Fed.Cl.Spec.Mstr. July 17, 2014); *see also Cucuras v. Sec'y, Health & Human Servs.,* 993 F.2d 1525, 1528 (Fed. Cir. 1993). "[W]ritten documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later." *Reusser v. Sec'y, Health & Human Servs.,* 28 Fed. Cl. 516, 523 (1993).

injury claim." *Chuisano*, 116 Fed. Cl. at 287 (citing *McKellar*, 101 Fed. Cl at 304). Considered alongside the impending expiration of the statute of limitations and appropriate conduct of petitioner's counsel, the verbal description provided by the Walgreens pharmacist on September 17, 2015, was sufficient to justify the filing of this petition and further efforts on this issue.

Petitioner filed his claim on the eve of the expiration of the Vaccine Act's statute of limitations. Although an extremely close call, the undersigned finds enough evidence existed at that time to justify the petition's filing. Subsequently, petitioner pursued his claim in a timely manner, limiting his efforts to the weaknesses plaguing the case. As soon as he obtained reliable evidence to show that he received the non-covered adult pneumococcal vaccination in his injured arm, petitioner filed a motion requesting the undersigned dismiss his claim. The undersigned finds the reasonable basis which existed at the time the petition was filed continued through the conclusion of this case. Petitioner is entitled to an award of attorneys' fees and costs.

## IV.   Appropriate Amount of Attorneys' Fees and Costs

When calculating the appropriate amount of attorneys' fees and costs in this case, petitioner asks the undersigned to utilize a forum hourly rate for petitioner's counsel rather than a local or geographical rate. Pet. Motion at 5. To support this request, petitioner filed the *Garrison* decision (*see supra* note 8), a reasoned decision by one of my colleagues who determined the hourly rate for petitioner's counsel should be based on forum rates. Pet. Motion at 13-25 (copy of *Garrison* decision). The petitioner in *Garrison* was awarded attorneys' fees for work performed by petitioner's counsel in 2014-15 at an hourly rate of $387.50. 2016 WL 3022076, at *8.

Respondent argues that if the undersigned determines an award of attorneys' fees and costs is appropriate in this case, attorneys' fees should be awarded utilizing a local or geographical hourly rate. Res. Opp. at 1. Noting it was under review at the time, respondent criticizes the decision in *Garrison*. Specifically, respondent maintains my colleague used incorrect forum and local rates for petitioner's counsel and applied an improper standard when determining forum rates were applicable to respondent's counsel. *Id.* at 10-20. Regarding the total amount of fees and costs to be awarded, respondent asks the undersigned to rely on her experience and discretion to determine a reasonable amount. *Id.* at 20-21.

Subsequent to the arguments made in this case, respondent's motion for review in *Garrison* was denied. *Garrison v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 99 (Aug. 17, 2016). Adopting the reasoning in *Garrison*, the undersigned recently awarded attorneys' fees in another SPU case based upon an hourly forum rate of $387.50 for work performed by petitioner's counsel in 2014-15 and $409.00 for work performed by petitioner's counsel in 2016-17. *Brooks v. Sec'y of Health & Human Servs.*, No. 14-0563V. In this case, petitioner seeks an award of attorneys' fees based upon the same hourly rates requested and awarded in *Brooks*, $387.50 for work performed in 2014-15 and $409.00 for work performed in 2016. The undersigned finds these rates

appropriate and awards attorneys' fees based upon the hourly rates requested by petitioner.  Additionally, the undersigned finds the amount of hours billed by petitioner's counsel is reasonable and thus, awards the full amount of attorneys' fees requested by petitioner.

Regarding the costs sought by petitioner, the undersigned finds them to be reasonable and related to proceedings in this case.  Thus, the undersigned also awards the full amount of costs requested by petitioner.

## V.    Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.  § 15(e)(1).  The undersigned finds petitioner in this case has satisfied both requirements.  Additionally, the amount sought by petitioner is reasonable.  Thus, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs and awards the full amount of attorneys' fees and costs requested.

The undersigned awards **$16,502.75** in attorneys' fees and **$429.57** in attorneys' costs for a total award of **$16,932.32**[14] **payable jointly to petitioner and petitioner's counsel, Curtis R. Webb.**

The clerk of the court shall enter judgment in accordance herewith.[15]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[14] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered.  Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir.1991).

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.